UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                                      Cr. No. 04-216-01-SM

JAMES TOBIN

**SUPERSEDING INDICTMENT**

The Grand Jury charges that:

**Count One**

**(Conspiracy Against Rights; 18 U.S.C. § 241)**

**Introduction**

1.	On November 5, 2002, pursuant to the laws of the United States and of the State of New Hampshire, an election was held in the District of New Hampshire, for the purpose of electing, among others, candidates for the offices of Member of the United States Senate and Member of the United States House of Representatives from the State of New Hampshire.  These candidates will hereinafter be referred to as federal candidates.

2.	On November 5, 2002, many persons residing in the District of New Hampshire were duly registered as voters and possessed the necessary qualifications as provided by law to entitle them to vote in the general election on that day for the federal candidates referred to in Paragraph One.  These voters will hereinafter be referred to as qualified voters.

3.	Many of these qualified voters intended to vote in the November 5, 2002, general election, and, in particular, to vote for federal candidates for one or both of the federal offices described in Paragraph One.

4.	Some of the aforesaid qualified voters who intended to vote in the November 5,

2002, general election for federal candidates were in need of transportation to the polls. Many of these qualified voters intended to rely on the assistance of the New Hampshire Democratic Party and/or the Manchester Professional Firefighters Association to provide them with free transportation to the polls on Election Day.

5. Each of the qualified voters referred to in the preceding Paragraph possessed the right, guaranteed by Article I, Sections 2 and 4, of the Constitution of the United States, to cast a ballot for a candidate seeking election to the Office of Member of the United States House of Representatives, and the further right, guaranteed by Article I, Sections 3 and 4, and Amendment XVII of the Constitution of the United States, to cast a ballot for a candidate seeking election to the Office of Member of the United States Senate, in the aforesaid election.

6. At all times relevant to this Indictment, the defendant, JAMES TOBIN, was the New England Regional Political Director for the Republican National Committee.

### The Conspiracy

7. From in or about October 2002 until in or about November 2002, in the District of New Hampshire and elsewhere, the defendant, JAMES TOBIN, did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with other individuals known and unknown to the Grand Jury to injure and oppress the aforesaid qualified voters in the free exercise and enjoyment of certain rights and privileges secured to each of them by the Constitution and laws of the United States, to wit:

   a. The right guaranteed to the qualified voters by and under Article One, Sections 3 and 4, and Amendment XVII to vote in the aforesaid election for the candidate of their choice for Member of the United States Senate, and to have their votes recorded, tabulated, and given full effect in the election.

   b. The right guaranteed to the qualified voters by and under Article One, Sections 2 and 4, to vote in the aforesaid election for the candidate of their choice for

Member of the United States House of Representatives, and to have their votes recorded, tabulated, and given full effect in the election.

## The Object of the Conspiracy

8.      The object of the conspiracy was to deprive inhabitants of New Hampshire, and, more particularly, qualified voters described in Paragraph Four, of their federally secured right to vote in the aforesaid election for candidates for the United States Senate and the United States House of Representatives by disrupting the telephone lines of the New Hampshire Democratic Party and the Manchester Professional Firefighters Association to prevent said qualified voters from getting to the polls to vote, in order to secure the election of candidates supported by the defendant, JAMES TOBIN, and his coconspirators.

## Manner and Means of the Conspiracy

9.      The manner and means through which the defendant, JAMES TOBIN, and his coconspirators sought to accomplish their objective included developing and implementing a plan in late October 2002 to disrupt telephone communications between certain qualified voters on Election Day and entities that were offering free transportation to the polls, to wit, telephone communications involving five telephone numbers associated with the New Hampshire Democratic Party and its local affiliates, and one telephone number associated with the Manchester Professional Firefighters Association, which telephone numbers had been made available to the public to assist qualified voters who were in need of transportation to their polling precincts on Election Day.

10.     It was a further part of the conspiracy that the defendant, JAMES TOBIN, and his coconspirators:

   a.   would cause and attempt to cause telephone communications between qualified voters and the Manchester Democratic Party field offices and the Manchester Professional Firefighters Association to be disrupted, blocked, and impeded on Election

3

Day; and

        b.      would cause and attempt to cause qualified voters in the aforesaid election to be unable to obtain transportation to the polls,

All with the purpose and intent that said qualified voters would be disrupted and obstructed in their efforts to vote in the aforesaid election, and that said qualified voters would thereby be injured and oppressed in the free exercise of their federally secured right to vote in the aforesaid election for the federal candidates referred to in Paragraph One.

## Overt Acts

11.    In furtherance of the conspiracy, and to accomplish its objectives, the defendant, JAMES TOBIN, and his coconspirators committed and caused to be committed several overt acts, including the following, in the District of New Hampshire and elsewhere:

        a.      In or about October 2002, Charles McGee, Executive Director of the New Hampshire Republican State Committee, informed the defendant, JAMES TOBIN, then the New England Regional Director of the Republican National Committee, that McGee wanted to hire a telephone services vendor to annoy and harass Democratic telephone volunteers in order to disrupt their attempts to communicate with qualified voters on Election Day. McGee told the defendant, JAMES TOBIN, in substance, that he had been unable to identify a vendor to implement the telephone harassment plan. McGee requested the assistance of the defendant, JAMES TOBIN, in identifying a vendor that would be willing and able to implement the plan;

        b.      In or about October 2002, the defendant, JAMES TOBIN, knowing that McGee wanted to hire a vendor to annoy and harass Democratic telephone volunteers and to disrupt their attempts to communicate with qualified voters, provided McGee with contact information for Allen Raymond, a former colleague of Tobin's who operated a Virginia-based telephone services vendor called, GOP Marketplace, and recommended that McGee call Raymond to seek his help with the described plan;

4

   c. In or about October 2002, the defendant, JAMES TOBIN, called Raymond, explained McGee's telephone harassment plan to him, asked Raymond if his company could help McGee implement the plan, and told Raymond in substance to expect a call from McGee;

   d. In or about October 2002, McGee called Raymond, introduced himself as having been referred by the defendant, JAMES TOBIN, and enlisted Raymond's help in implementing the telephone harassment plan;

   e. In or about late October or early November 2002, a representative of GOP Marketplace called the principal of an Idaho based tele-services company (hereinafter "the Tele-Services Co-Conspirator").  During that and subsequent telephone calls the Tele-Services Co-Conspirator agreed that employees of his company would place hang-up calls to several numbers throughout the day on Election Day, November 5, 2002;

   f. In or about early November 2002, the Tele-Services Co-Conspirator arranged for employees of his company to place repeated hang-up calls to several numbers provided by a representative of GOP Marketplace throughout the day on Election Day, November 5, 2002;

   g. On or about November 4, 2002, McGee sent a check for $15,600 drawn on the account of the New Hampshire Republican State Committee to GOP Marketplace as payment for placing hang-up calls repeatedly throughout Election Day to five Democratic phone numbers and the Manchester Firefighters' phone number dedicated to assisting qualified voters in exercising their rights to vote by providing qualified voters with information regarding their polling precincts and by providing qualified voters with transportation to their polling precincts on Election Day;

   h. On or about November 4, 2002, GOP Marketplace tendered a check for $2,500 to the Tele-Services Co-Conspirator's company to place the calls.  The Tele-Services Co-

5

Conspirator accepted delivery of the check on behalf of his company;

   i. On or about November 4, 2002, Charles McGee sent by electronic mail to Allen Raymond the telephone numbers of the five New Hampshire Democratic offices and the Manchester Professional Firefighters Association that were to be disrupted with repeated hang-up calls on Election Day.  On or about November 4, 2002, Allen Raymond caused a representative of his company, GOP Marketplace, to communicate those same six phone numbers to the Tele-Services Co-Conspirator;

   j. On or about November 5, 2002, between approximately 7:45 a.m. EST and approximately 9:10 EST, employees of the Tele-Services Co-Conspirator's company in Idaho called the identified telephone numbers in New Hampshire several hundred times, causing them to ring repeatedly and continuously until answered, and then hung up without disclosing their identities.

 All in violation of Title 18, United States Code, Section 241.

### Count Two

**(Conspiracy to Violate 47 U.S.C. §§ 223(a)(1)(C) & 223(a)(1)(D))**

 12. The facts set forth in the previous paragraphs numbered 1 through 6 and 9 through 10, *supra*, are hereby re-alleged as though set forth in full herein.

### The Object of the Conspiracy

 13. From in or about October 2002 until in or about November 2002, in the District of New Hampshire and elsewhere, the defendant, JAMES TOBIN, did knowingly, willfully, and unlawfully conspire, confederate, combine, and agree with other individuals known and unknown to the Grand Jury, to commit an offense against the United States, to wit:

   a. to make telephone calls in which the callers did not disclose their identities with intent to annoy and harass the recipients of those calls, in violation of Title

6

47, United States Code, Section 223(a)(1)(C); and

      b.    to make and cause certain telephones repeatedly and continuously to ring, with intent to harass the recipients of those calls, in violation of Title 47, United States Code, Section 223(a)(1)(D).

All in violation of Title 18, United States Code, Section 371.

### Manner and Means of the Conspiracy

15. 14.    The manner and means through which the defendant, JAMES TOBIN, and his coconspirators sought to accomplish the objectives of the conspiracy included developing and implementing a plan in late October and early November 2002 to disrupt communications to five telephone numbers associated with the New Hampshire Democratic Party and one number associated with the Manchester Professional Firefighters Association on Election Day, November 5, 2002. They planned to accomplish the disruption by calling or causing to be called those six numbers repeatedly throughout the day and hanging up with intent to annoy and harass the persons at the called numbers. The coconspirators thereby intended to disrupt these two organizations' efforts to assist qualified voters in exercising their rights to vote by providing qualified voters with information regarding their polling precincts and by providing qualified voters with transportation to their polling precincts on Election Day.

### Overt Acts

15.    The allegations contained in Paragraph 11 of Count One, *supra*, in particular the Overt Acts alleged in subparagraphs 11.a. through 11.j., are hereby realleged as though set forth in full herein.

All in violation of Title 18, United States Code, Section 371.

### Count Three
### (Aiding & Abetting Violation of 47 U.S.C. § 223(a)(1)(C))

16.    The facts set forth in the previous paragraphs, numbered 1 through 6 and 9

through 11, *supra*, are hereby re-alleged as though set forth in full herein.

17. From in or about October 2002 until in or about November 2002, in the District of New Hampshire and elsewhere, the defendant, JAMES TOBIN, did knowingly and willfully aid, abet, induce and procure the making of harassing telephone calls in interstate communication without disclosing the caller's identity and with intent to annoy and harass persons at the called numbers and who received the communications.

All in violation of Title 47, United States Code, Section 223(a)(1)(C), and Title 18, United States Code, Section 2(a).

### Count Four
### (Aiding & Abetting Violation of 47 U.S.C. § 223(a)(1)(D))

18. The facts set forth in the previous paragraphs, numbered 1 through 6 and 9 through 11, *supra*, are hereby re-alleged as though set forth in full herein.

19. From in or about October 2002 until in or about November 2002, in the District of New Hampshire and elsewhere, the defendant, JAMES TOBIN, did knowingly and willfully aid, abet, induce and procure the act of making or causing in interstate communications the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number.

All in violation of Title 47, United States Code, Section 223(a)(1)(D), and Title 18, United States Code, Section 2(a).

May 18, 2005

United States Department of Justice
Martha Stansell-Gamm, Chief
Computer Crime & Intellectual Property Section

/s/ Foreperson_____    By:  /s/Todd M. Hinnen_____
Grand Jury Foreperson                    Todd M. Hinnen
                                         (202) 305-7747